UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
INTERCEPTOR IGNITION INTERLOCKS,
INC.,

                    Plaintiff,                    18-cv-4289 (PKC)

    -against-

                                                       OPINION AND
                                                       ORDER
AT&T MOBILITY SERVICES, LLC,

                    Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiff Interceptor Ignition Interlocks, Inc. ("Interceptor") sued AT&T Mobility Services, LLC ("AT&T") in the Supreme Court of the State of New York, New York County, alleging that AT&T improperly terminated the wireless communication services it provided to Interceptor in connection with Interceptor's patented automobile ignition "interlock" device, designed to help prevent drunk driving. Interceptor brought claims for breach of contract and breach of the implied covenant of good faith and fair dealing. AT&T removed the action to this Court on the basis of diversity jurisdiction and has since moved to compel arbitration of the pending claims and stay the action.[1] For the reasons set forth below, AT&T's motion to compel arbitration and stay proceedings will be granted.

BACKGROUND

        Interceptor alleges that in 2004 it entered into an oral contract for AT&T to provide SIM cards (subscriber identification module cards) and wireless telecommunication services. (Ruocco Decl. ¶¶ 2, 3, 5.) It asserts that its claim arises under this oral agreement.

---

[1] AT&T also alternatively moved for dismissal on Rule 12(b)(6), Fed. R. Civ. P., grounds, which is unnecessary for this Court to reach.

AT&T, in contrast, has come forward with evidence that it does "not permit a customer such as Interceptor to receive and be billed for wireless communications services unless the customer enters into a written agreement with AT&T to receive such services." (Cooper Decl. ¶ 4.) AT&T notes that Interceptor's Complaint (at ¶ 52) describes a specific AT&T invoice for services and the invoice identifies Interceptor by a Foundation Account Number ("FAN"). (Id. ¶ 5). Utilizing this unique number, AT&T was able to locate a written agreement between "AT&T Mobility National Accounts LLC" and Interceptor, titled "AT&T Corporate Digital Advantage Agreement" (the "ACDA Agreement"). (Id. ¶ 6-8, Ex. 2.) AT&T has a separate record of the April 29, 2008 electronic signature of John Ruocco, the President of Interceptor, on the ACDA Agreement. (Id. ¶ 11, Ex. 3.)

The ACDA Agreement expressly provides for AT&T to provide "Service" to Interceptor and provides for a Service Discount based upon Interceptor's monthly volume of incurred charges, including a 17% discount when the monthly volume of charges on certain services reaches $916,000. (Id., Ex. 2 at 3). "Service" is defined as "commercial mobile radio service, including Voice Service and Wireless Data Service, and other related products, services and programs provided under the Agreement." (Id., Ex. 4 at 10.) The ACDA Agreement states in its first paragraph that the agreement is subject to the General Terms and Conditions found on the AT&T Corporate Digital Advantage Program's website and provides the URL of that website after the words in boldface "**The Program Website is**. . . ."

The General Terms and Conditions contain a broad arbitration provision:

> **10. Arbitration.** . . . Any dispute arising out of or related to this Agreement that cannot be resolved by negotiation shall be resolved by binding arbitration administered by the American Arbitration Association ("AAA") under its Commercial Arbitration Rules in effect at the time that a dispute is submitted for resolution (the "Rules"), as modified by this Agreement. . . .

(Id., Ex. 4.) It further provides that the defined party to the ACDA Agreement, "AT&T Mobility National Accounts LLC," includes "its Affiliates. . . ." (Id., Ex. 4 at 10.) It also defines "Affiliate" as meaning and including "legal entities controlling or controlled by or under common control" with "AT&T Mobility National Accounts LLC." (Id.)

Interceptor, by Ruocco, also entered into the "AT&T Machine to Machine Wireless Communications Agreement" (the "M to M Agreement") with AT&T Mobility II, LLC "on behalf of its Affiliates" on or about August 17, 2011 with terms and conditions, insofar as relevant to the motion, substantially identical to those referenced above, including the quoted arbitration provision. (Id., Ex. 5, 6.)

Interceptor urges that the ACDA Agreement is "entirely unrelated" to the services giving rise to its claims against AT&T. It also asserts that no services were ever provided pursuant to the M to M Agreement. While Ruocco asserts that he has "no recollection" of agreeing to the ACDA Agreement (Ruocco Decl. ¶ 6), Interceptor submits no evidence to contradict the document or its electronic signature verification. Ruocco does not dispute that Interceptor executed the M to M Agreement. (Id. ¶ 14-15.)

DISCUSSION

The principles governing a motion to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, are familiar and require little discussion. The Supreme Court has explained that the purpose of the FAA is "to ensure judicial enforcement of privately made agreements to arbitrate." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219 (1985). The FAA reflects "a strong federal policy favoring arbitration as an alternative means of dispute resolution." JLM Indus. v. Stolt-Nielsen SA, 387 F.3d 163, 171 (2d Cir. 2004) (quoting

Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001)).

The FAA applies to the claims in Interceptor's Complaint because the described wireless services are comfortably encompassed within the term interstate commerce. See 9 U.S.C. § 1. "The Second Circuit has established a two-part test for determining arbitrability of claims not involving federal statutes: (1) whether the parties agreed to arbitrate disputes at all; and (2) whether the dispute at issue comes within the scope of the arbitration agreement." ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co., 307 F.3d 24, 28 (2d Cir. 2002); see also JLM Indus., 387 F.3d at 169.

AT&T has come forward with uncontradicted evidence that the parties did indeed agree to arbitrate disputes. Interceptor does not deny entering into the M to M Agreement with its broad arbitration provision and, at most, Ruocco does not recall if he entered into the ACDA Agreement. A party's failure to recall whether the party executed an agreement is not sufficient to defeat summary judgment in the face of a movant's evidence that the party did enter into the agreement. Vardanyan v. Close-Up Int'l, Inc., 315 F. App'x 315, 318 (2d Cir. 2009). This principle applies with equal force to a motion to compel arbitration. Moise v. Family Dollar Stores of New York, Inc., No. 16-CV-6314 (RA), 2017 WL 2378193, at *3 (S.D.N.Y. June 1, 2017) (Abrams, J.).

As to the second inquiry, whether the dispute falls within the scope of the arbitration agreement, there are two relevant points found in the language of the arbitration provisions of the ACDA Agreement and the M to M Agreement. First, the scope of the arbitration provision is broad covering "[a]ny dispute arising out of or related to this Agreement" and the term "Services" as used in the agreements is also broad. Second, the agreements provide

4

that the arbitration shall be "administered by the American Arbitration Association . . . under its Commercial Arbitration Rules in effect at the time that a dispute is submitted for resolution. . . ." Rule 7(a) of the Commercial Arbitration Rules of the American Arbitration Association provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." (Fedor Decl., Ex. A at 14.) Thus, on their face, the arbitration agreements entered into by AT&T and Interceptor have granted to the arbitrator the power and authority to decide whether a given dispute, such as that alleged in the Complaint, falls within the scope of the arbitration provision.

The enforceability of a contractual delegation to an arbitrator of the power to decide whether a particular dispute falls within the scope of an arbitration agreement was recently reaffirmed by the Supreme Court:

> When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.

Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 529 (2019). In Henry Schein, the source of the delegation to the arbitrator was the rules of the American Arbitration Association, although not the Commercial Arbitration Rules. Id. at 528. Rule 7(a) of the Commercial Arbitration Rules (quoted above), however, is similarly explicit.

The Court will grant AT&T's motion insofar as it seeks to compel arbitration of the claims asserted in the Complaint and stay the action pending the completion of the arbitration. WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 74 (2d Cir. 1997) ("Under Section 3 of the FAA, 9 U.S.C. § 3, a district court must stay proceedings if satisfied that the parties have

5

agreed in writing to arbitrate an issue or issues underlying the district court proceeding.") (internal quotation marks omitted).

CONCLUSION

Defendant AT&T's motion (Doc. 17) is GRANTED to the extent it seeks to compel arbitration and stay proceedings pending the outcome of arbitration. It is unnecessary for the Court to reach any other grounds asserted in the motion. The parties are ordered to report to the Court on the status of the arbitration as of June 30, 2019 within 14 days thereafter. Defendant's motion (Doc. 37) for oral argument is DENIED as moot.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, NY
March 7, 2019